# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 19-21995-Civ-WILLIAMS/TORRES

AFRICA GROWTH CORPORATION,

    Plaintiff,

v.

REPUBLIC OF ANGOLA,

    Defendant.

_____/

## ORDER ON PLAINTIFF'S MOTION FOR JURISDICTIONAL DISCOVERY

This matter is before the Court on Africa Growth Corporation's ("Plaintiff") motion for jurisdictional discovery against the Republic of Angola ("Defendant"). [D.E. 23]. Defendant responded to Plaintiff's motion on October 31, 2019 [D.E. 27] to which Plaintiff replied on November 14, 2019. [D.E. 35]. Therefore, Plaintiff's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed above, Plaintiff's motion is **DENIED**.

## *I.    BACKGROUND*

Plaintiff filed this action on May 16, 2019 [D.E. 1], alleging breach of contract and unjust enrichment. The facts of this case relate to an attempt to resolve a two-year old dispute in connection with Defendant's seizure and expropriation of assets. Plaintiff alleges that the parties entered into a settlement agreement in Lisbon, Portugal on February 12, 2019. The agreement provided that Defendant would pay

1

Plaintiff $47.5 million dollars via wire transfer to Plaintiff's Miami-based lawyers in exchange for the release of Plaintiff's rights and claims to real property that Defendant expropriated. Plaintiff claims that, during the negotiations, Defendant represented that the agreement had the personal approval and support of Angolan President Joao Lourenco ("President Lourenco"). However, Plaintiff alleges that Defendant failed to make any payments to a Miami bank account and that Defendant breached the underlying settlement agreement. Plaintiff therefore seeks the immediate enforcement of the agreement, including compensatory damages, prejudgment interest, and costs.

## *II. ANALYSIS*

On August 30, 2019, Defendant filed a motion to dismiss Plaintiff's complaint because the Court lacks jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"). Plaintiff argues that Defendant's motion lacks merit because the Court has jurisdiction under the commercial activity exception of the FSIA. More specifically, Plaintiff claims that making an agreement to resolve matters between parties – including settling lawsuits – is a recognized exception to immunity. Plaintiff also contends that there is an absolute right to discovery when a district court's jurisdiction is genuinely in dispute and that Plaintiff must be given an opportunity to secure evidence to the extent jurisdiction might exist.[1] Plaintiff posits that there are several factual disagreements between the parties, including

---

[1] To determine if the Court has jurisdiction, Plaintiff seeks to depose President Lourenco, the Minister of Justice and Human Rights, two government officials who attended the meeting in Portugal, and a 30(b)(6) deponent of the Angolan government. Plaintiff also seeks the following discovery: forty-seven requests for admission, eight interrogatories, and nineteen categories of documents.

2

the existence of a settlement agreement, whether the agreement is binding, and the applicable law to the agreement's enforceability. Plaintiff suggests that these facts are essential to whether the FSIA's commercial exception applies and that it would be premature to determine subject matter jurisdiction before Plaintiff is allowed the opportunity to conduct jurisdictional discovery. Therefore, Plaintiff concludes that it must be given leave to conduct jurisdictional discovery before the disposition of Defendant's motion to dismiss.

Under the FSIA, a foreign state is immune from the jurisdiction of both the federal and the state courts, except as provided by international agreements, *see* 28 U.S.C. § 1330(a); *id.* § 1604, by specifically enumerated exceptions, *see id.* § 1605(a)(1)-(7), (b), (d), or by certain other exceptions relating to counterclaims in actions brought by the foreign state itself, *see id.* § 1607. If no exception applies, a foreign sovereign's immunity under the FSIA is complete and a state or federal court does not have subject matter jurisdiction over a plaintiff's case. *See Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 443 (1989) ("The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country."); *see also Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534, 1543 (11th Cir. 1993) (noting that FSIA is "[t]he only possible source of federal jurisdiction in suits against corporations owned by foreign states"). Conversely, "[i]f an exception does apply, the district court has jurisdiction." *Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, 2015 WL 7760057, at *4 (S.D.

Fla. Dec. 2, 2015) (citing *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1312 (11th Cir. 2009)).

To establish subject matter jurisdiction under the FSIA, a plaintiff must overcome the presumption that a foreign state is immune from suit by producing evidence that "the conduct which forms the basis of [the] complaint falls within one of the statutorily defined exceptions." *S & Davis Int'l,* 218 F.3d at 1300; *see also In re Terrorist Attacks on September 11, 2001,* 538 F.3d 71, 80 (2d Cir. 2008) (finding that a plaintiff has the burden of producing evidence showing that, under exceptions to the FSIA, immunity should not be granted). Whether the plaintiff has satisfied his burden of production is determined by looking at "the allegations in the complaint [and] the undisputed facts, if any, placed before the court by the parties." *In re Terrorist Attacks,* 538 F.3d at 80 (quotation marks, alterations, and citation omitted). Once the plaintiff demonstrates that one of the statutory exceptions to FSIA immunity applies, the burden then shifts to the defendant to prove, by a preponderance of the evidence, that the plaintiff's claims do not fall within that exception. *See S & Davis Int'l,* 218 F.3d at 1300; *Arango v. Guzman Travel Advisors Corp.,* 621 F.2d 1371, 1378 (5th Cir. Unit B 1980).[2]

In light of these principles, Plaintiff argues that the Court has subject matter jurisdiction under the commercial activity exception of the FSIA. *See* 28 U.S.C. §

---

[2] To avoid burdening a sovereign that proves to be immune from suit, jurisdictional discovery should be carefully controlled and limited, *see Foremost-McKesson,* 905 F.2d at 449, and it should not be authorized if the defendant raises either a different jurisdictional or an "other non-merits ground[] such as forum non-conveniens [or] personal jurisdiction" the resolution of which would impose a lesser burden upon the defendant, *In re Papandreou,* 139 F.3d 247, 254–55 (D.C. Cir. 1998).

4

1605(a)(2). "[A]n activity is commercial under the FSIA: when a foreign government acts, not as regulator of a market, but in the manner of a private player within it." *Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel,* 657 F.3d 1159, 1176 (11th Cir. 2011) (quotations omitted). The commercial activity exception applies if one of three actions occur:

> [T]he action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

Plaintiff suggests that the commercial activity exception applies because the parties entered into a binding settlement agreement in Portugal and Defendant failed to wire funds to a bank account in Miami, Florida.[3] Plaintiff never clarifies, however, which prong of § 1605(a)(2) applies. But, given that the only act that occurred – or that was scheduled to occur – in the United States was Defendant's expected payment of $47.5 million dollars, neither the first nor second prong can apply. We will therefore only consider whether the third prong applies and whether the failure to send funds to a Miami bank account "causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).

---

[3] Plaintiff relies on cases that focus on the explicit or implied waiver exception in 28 U.S.C. § 1605(a)(1), but never makes clear as to whether the exception applies to the facts of this case. Plaintiff included the waiver exception in its complaint, but never presented any argument or evidence in support thereof. Because the Court has no obligation to consider arguments that Plaintiff failed to raise, we will go no further in the consideration of § 1605(a)(1). *See, e.g.*, [D.E. 27] (Defendant noting that Plaintiff "has since abandoned reliance on," the express or implied waiver exception).

5

After considering the arguments presented and the relevant authorities, Plaintiff's motion is unavailing because – while Plaintiff spends a lengthy amount of time discussing the factual disputes between the parties on whether a settlement occurred and whether the agreement is enforceable – Plaintiff has failed to explain how an expected payment in Miami, Florida "causes a direct effect in the United States." *Id*. A direct effect under the FSIA is one that follows "as an immediate consequence of the defendant's . . . activity." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992) (quotations and citation omitted). The effect must be more than "purely trivial" or "remote and attenuated," but it need not be a substantial or foreseeable effect. *Id.* In making this evaluation, courts "'often look to the place where the legally significant acts giving rise to the claim occurred' in determining the place where a direct effect may be said to be located." *Id.* at 727 (citing *United World Trade v. Mangyshlakneft Oil Production Ass'n,* 33 F.3d 1232, 1239 (10th Cir. 1994)). Courts also ask, when assessing "direct effects," if the effect was "sufficiently 'direct' and sufficiently 'in the United States' that Congress would have wanted an American court to hear the case?" *Guevara v. Republic of Peru,* 608 F.3d 1297, 1309 (11th Cir. 2010) (quoting *Harris Corp. v. Nat'l Iranian Radio & Television,* 691 F.2d 1344, 1351 (11th Cir. 1982) (internal citation and quotation marks omitted)).

Here, the only action or lack thereof that triggered the FSIA was Defendant's alleged failure to wire payments to a Miami bank account after an agreed upon settlement in Portugal. Plaintiff argues that there is a possibility that jurisdiction

6

might exist and that it should be allowed, at the very least, to take discovery. But, the Eleventh Circuit has repeatedly held that "the so-called 'negative activity' of a foreign sovereign's failure to make a payment cannot overcome immunity under the FSIA." *Araya-Solorzano v. Gov't of Republic of Nicaragua*, 562 F. App'x 901, 904 (11th Cir. 2014) (citing *Guevara,* 608 F.3d at 1310 (explaining that Peru's failure to pay reward money within the United States did not have the necessary "direct effects" under § 1605(a)(2)); *see also Samco Global Arms, Inc. v. Arita,* 395 F.3d 1212, 1217 (11th Cir. 2005) (holding that, in the context of a breach-of-contract claim, U.S.-based injuries such as an inability to ship goods to the United States, lost profits from future sales, harm to reputation, and expenditures connected to the breach are too indirect and speculative to qualify as "immediate consequences.").

The same reasoning applies to the facts of this case because Defendant's alleged failure to make any payments in the United States constitutes the same type of negative activity that the Eleventh Circuit has repeatedly rejected. *See, e.g.*, *Guevara,* 608 F.3d at 1310 ("[C]ounsel for Guevara conceded that the primary activity for purposes of § 1605(a)(2)'s analysis was really Peru's failure to make the reward payment within the United States—a sort of 'negative activity.' We are unaware of any federal court holding that such 'negative activity' satisfies the jurisdictional requirements of § 1605(a)(2), and we decline to reach that holding here."); *see also Adler v. Fed. Republic of Nigeria,* 107 F.3d 720, 726–27 (9th Cir. 1997) ("Mere financial loss by a person – individual or corporate – in the U.S. is not, in itself, sufficient to constitute a 'direct effect.'") (internal citation omitted); *Rogers*

7

*v. Petroleo Brasileiro, S.A.,* 673 F.3d 131, 140 (2d Cir. 2012) (the plaintiff's status as a U.S. citizen is insufficient, standing alone, to result in "direct effects" in the United States).

While neither party referenced any of these cases nor made any argument in support or opposition, the authority referenced above eviscerates Plaintiff's request for jurisdictional discovery. Plaintiff's remaining allegations are also of little use because the settlement negotiations and the contract signing both occurred outside the United States. And Plaintiff alleges that Defendant never made *any* payments to a Miami-based bank account. It is therefore unclear how discovery can remedy the absence of jurisdiction even if we construe every allegation in Plaintiff's favor.

A similar – but distinguishable case – to the facts presented is the Supreme Court's decision in *Weltover*. There, a breach of contract arose when Argentina unilaterally rescheduled its bonds and it caused direct effects in the United States. The Court held that jurisdiction existed under the FSIA because the contract designated New York as the place of payment, some payments were made before the rescheduling, and money "that was supposed to have been delivered to a New York bank for deposit was not forthcoming." *Weltover,* 504 U.S. at 618. *Weltover* is materially different than the case presented because the only connection to the United States in this case is Plaintiff's citizenship as a Nevada-based corporation, and the *expected* payment from a settlement agreement in Portugal that was to be paid in U.S. dollars to a Miami bank account. That is, unlike *Weltover*, no payment has ever been made to a bank account in the United States.

In sum, it entirely unclear how discovery will aid in the conferral of jurisdiction. First, Plaintiff fails to explain how this case is any different than the Eleventh Circuit's decisions referenced above and how Defendant's failure to make any payments in the United States constitutes commercial activity. Second, Plaintiff's motion is devoid of any compelling legal authority to suggest otherwise and it fails to identify any specific discovery that could meet an exception under the FSIA. Finally, Plaintiff's motion is unpersuasive because it misses the forest for the trees in that – even if the Court assumes every factual allegation to be true – jurisdiction would still not exist. We therefore conclude that Plaintiff's motion is **DENIED**[4] because any jurisdictional discovery that Plaintiff seeks could not cure the fact that the Court lacks jurisdiction under the FSIA. *See Virtual Countries, Inc. v. Republic of S. Africa*, 300 F.3d 230, 236 (2d Cir. 2002) ("Congress did not intend to provide jurisdiction whenever the ripples caused by an overseas transaction manage eventually to reach the shores of the United States.") (internal quotation marks omitted); *see also Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 894 (5th Cir. 1998) ("[T]he third clause does not permit jurisdiction over foreign states whose acts cause only speculative, generalized, immeasurable, and ultimately unverifiable effects in the United States.").

---

[4] If the parties had "entered into a contract in the United States, performed what was owed in the United States, and the contract was breached in the United States," Plaintiff's argument would be far more compelling. *DeVengoechea v. Bolivarian Republic of Venezuela*, 2016 WL 11552419, at *7 (S.D. Fla. Sept. 29, 2016), *aff'd*, 889 F.3d 1213 (11th Cir. 2018).

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to take jurisdictional discovery is **DENIED**.[5] [D.E. 23].

**DONE AND ORDERED** in Chambers at Miami, Florida, this 25th day of November, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

---

[5] Defendant raised a viable argument that this case should be dismissed because of *res judicata*. However, we need not reach this argument because, for the reasons discussed above, the Court lacks jurisdiction over this case under the FSIA.