## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| Africa Growth Corporation, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Civil Action No. 1:19-cv-21995 (KMW) ) ) |
| Republic of Angola, | ) ) |
| Defendant. | ) ) ) |

## DEFENDANT REPUBLIC OF ANGOLA'S MOTION TO DISMISS THE AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Brian M. Silverio (FL Bar No. 0183301)
SILVERIO & HALL, P.A.
255 8th Street South
Naples, FL. 34102
Tel: 239-649-1001
Fax: 239-649-1972

Janis H. Brennan (*pro hac vice*)
Nicholas M. Renzler (*pro hac vice*)
FOLEY HOAG LLP
1717 K St. NW
Washington, D.C.  20006
Tel:  202-223-1200
Fax:  202-785-6687

Andrew Z. Schwartz (*pro hac vice*)
Andrew B. Loewenstein (*pro hac vice*)
Christopher Modlish (*pro hac vice*)
FOLEY HOAG LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
Tel: 617-832-1000
Fax: 617-832-7000

*Attorneys for Defendant Republic of Angola*

March 10, 2020

**Table of Contents**

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ......................................................................................................................... 1

    I.      The Prior Action in the District of Columbia ..........................................................1

    II.     The Alleged Settlement Agreement.........................................................................4

    III.    The Instant Action....................................................................................................5

          A.     AFGC's Original Complaint........................................................................5

          B.     AFGC's Failed Attempt to Use This Case to Avoid Dismissal of the D.C. Action ..................................................................................................5

          C.     Angola's Motion to Dismiss the Original Complaint in This Action..........6

          D.     AFGC's Amended Complaint......................................................................7

ARGUMENT............................................................................................................................... 9

    I.      The Court Lacks Subject Matter Jurisdiction Over AFGC's Claims .....................9

          A.     The Action Is Not "Based Upon" an Act Outside the United States in Connection with Commercial Activity of Angola.....................................10

          B.     AFGC Has Not Alleged a Direct Effect in the United States....................12

    II.     The Court Lacks Personal Jurisdiction Over Angola ...........................................16

    III.    Venue is Improper in the Southern District of Florida .........................................16

    IV.    AFGC Has Failed to State a Claim for Relief.......................................................17

          A.     Breach of Contract (Count I) ....................................................................18

          B.     Unjust Enrichment (Count II) ...................................................................18

CONCLUSION........................................................................................................................... 20

## Table of Authorities

**Cases**

*Acumen Constr., Inc. v. Neher*, 616 So. 2d 98 (Fla. Dist. Ct. App. 1993).................................... 13

*Africa Growth Corp. v. Republic of Angola*, No. 17-2569 (BAH),
    2019 U.S. Dist. LEXIS 120571 (D.D.C. July 19, 2019)..................................................... passim

*Am. Safety Ins. Serv. v. Griggs*, 959 So. 2d 322 (Fla. Dist. Ct. App. 5th Dist. 2007) ................. 20

*Am. Telecom Co., LLC v. Republic of Lebanon*, 501 F.3d 534 (6th Cir. 2007)............................ 15

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989) ................................. 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................................................ 17

*Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398 (1964) ...................................................... 11

*Beg v. Islamic Republic of Pak.*, 353 F.3d 132 (11th Cir. 2003) ........................................... 11, 12

*Behrman v. Allstate Life Ins. Co.*, No. 04-60926-CIV,
    2005 U.S. Dist. LEXIS 7262 (S.D. Fla. Mar. 23, 2005)........................................................ 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 17

*Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175 (D.C. Cir. 2013) ........ 16

*Bettis v. Islamic Republic of Iran*, 315 F.3d 325 (D.C. Cir. 2003) ............................................... 17

*Butler v. Sukhoi Co.*, 579 F.3d 1307 (11th Cir. 2009) .............................................................. 9, 10

*De Fontbrune v. Wofsy*, 838 F.3d 992 (9th Cir. 2016) ................................................................. 13

*Devengoechea v. Bolivarian Republic of Venez.*, 889 F.3d 1213 (11th Cir. 2018) ...................... 12

*Florida Power Corp. v. City of Winter Park*, 887 So. 2d 1237 (Fla. 2004) ................................. 20

*Garb v. Republic of Pol.*, 440 F.3d 579 (2d Cir. 2006) ................................................................ 12

*Gilman v. John Hancock Variable Life Ins. Co.*,
    No. CA 02-00051 AB, 2003 Fla. Cir. LEXIS 1116 (Fla. Cir. Ct. Oct. 20, 2003) ................... 19

*Goodman v. Olsen*, 305 So. 2d 753 (Fla. 1974)........................................................................... 13

*Guevara v. Republic of Peru*, 608 F.3d 1297 (11th Cir. 2010)..................................................... 15

*Hawthorne v. MacAdjustment, Inc.*, 140 F.3d 1367 (11th Cir. 1998) ........................................... 17

*Jacobs v. Estefan*, No. 15-22393-CV,
   2016 U.S. Dist. LEXIS 193682 (S.D. Fla. July 6, 2016) ......................................................... 16

*Kolodziej v. Mason*, 774 F.3d 736 (11th Cir. 2014) ...................................................................... 13

*Lawrence v. Dunbar*, 919 F.2d 1525 (11th Cir. 1990) ................................................................... 10

*Lawrence v. Richman Group Capital Corp.*, 358 F. Supp. 2d 29 (D. Conn. 2005) ..................... 18

*Motmanco, Inc. v. McDonald's Corp.*, No. 3:04-cv-270-J-99HTS,
   2005 U.S. Dist. LEXIS 33965 (M.D. Fla. Mar. 28, 2005) ...................................................... 13

*Muniz v. Gca Servs. Grp.*, No. 3:05-cv-172-J-33MMH,
   2006 U.S. Dist. LEXIS 52194 (M.D. Fla. July 28, 2006) ....................................................... 13

*OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390 (2015) ......................................................... 11

*Olsen v. O'Connell*, 466 So. 2d 352 (Fla. Dist. Ct. App. 2d Dist. 1985) ..................................... 14

*Prewitt Enters. v. OPEC*, 353 F.3d 916 (11th Cir. 2003) .............................................................. 13

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) .................................. 11, 12, 15, 16

*Rogers v. Petroleo Brasileiro*, S.A., 673 F.3d 131 (2d Cir. 2012) ............................................... 15

*S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292 (11th Cir. 2000) .............................. 10

*Samco Global Arms, Inc. v. Arita*, 395 F.3d 1212 (11th Cir. 2005) ......................................... 9, 16

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993) ............................................................................ 9, 11

*Sequeira v. Republic of Nicar.*, No. 16-25052,
   2019 U.S. Dist. LEXIS 25182 (S.D. Fla. Feb. 14, 2019) ........................................................ 10

*Tex. Dep't of Health v. Neal*, No. 03-09-00574-CV,
   2011 Tex. App. LEXIS 3460 (Tex. App. May 6, 2011) .......................................................... 12

*Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc.*,
   92 F.3d 1110 (11th Cir. 1996) ................................................................................................. 19

*United States v. Carmack*, 329 U.S. 230 (1946) ........................................................................... 12

*Virgilio v. Ryland Grp., Inc*., 680 F.3d 1329 (11th Cir. 2012) ..................................................... 20

*Walewski v. Zenimax Media, Inc.*, No. 6:11-cv-1178-Orl-28DAB,
   2012 U.S. Dist. LEXIS 33181 (M.D. Fla. Jan. 27, 2012) ....................................................... 19

*Westfield v. Fed. Republic of Germany*, 633 F.3d 409 (6th Cir. 2011) ......................................... 15

*Willcox v. Lloyds TSB Bank, PLC*, No. 13-00508 ACK-RLP,
    2014 U.S. Dist. LEXIS 176706 (D. Haw. Dec. 23, 2014)........................................................ 13

*Wingold v. Horowitz*, 292 So. 2d 585 (Fla. 1974) ......................................................................... 13

**Statutes**

28 U.S.C. § 1330(b) ................................................................................................................... 9, 16

28 U.S.C. § 1391(f) .............................................................................................................. 1, 16, 17

28 U.S.C. §§ 1602 *et seq.*................................................................................................... 1, 3, 9, 10

Fla. Stat. § 725.01 ......................................................................................................................... 14

**Rules**

Fed. R. Civ. P. 12(b)(1)............................................................................................................... 6, 8

Fed. R. Civ. P. 12(b)(2).......................................................................................................... 6, 8, 16

Fed. R. Civ. P. 12(b)(3).......................................................................................................... 6, 8, 16

Fed. R. Civ. P. 12(b)(6).................................................................................................... 6, 8, 17, 18

Fed. R. Civ. P. 41(a)(2)................................................................................................................... 5

Fed. R. Civ. P. 44.1 ...................................................................................................................... 13

## INTRODUCTION

Defendant the Republic of Angola ("Angola") moves to dismiss the Amended Complaint of Plaintiff Africa Growth Corporation ("AFGC") with prejudice pursuant to Fed. R. Civ. P. 12(b)(1), (2), (3) and (6). The Court should grant this motion because it lacks jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq.*, venue is improper in this District, and AFGC fails to state any claim upon which relief can be granted.

For the purposes of this motion, Angola does not dispute the factual allegations in AFGC's Amended Complaint. Instead, Angola contends that the Amended Complaint fails on its face. Even taking all of AFGC's allegations as true, AFGC fails to establish that this Court has jurisdiction under the FSIA's commercial activity exception to sovereign immunity. Further, AFGC's attempt to manufacture venue in this District runs afoul of the FSIA venue statute, 28 U.S.C. § 1391(f), under which this action, like AFGC's previously dismissed action against Angola, could only be brought in the District of Columbia. Finally, AFGC has failed to state a contract or unjust enrichment claim upon which relief can be granted.

## BACKGROUND

### I.   The Prior Action in the District of Columbia

On November 15, 2017, AFGC commenced an action against Angola in the District Court for the District of Columbia. *Africa Growth Corp. v. Republic of Angola, et al.*, No. 1:17-cv-2469 (BAH) (D.D.C., filed Nov. 15, 2017) ("D.C. Action").[1] That action was dismissed with

---

[1] AFGC's complaint in the D.C. Action is attached hereto as Exhibit A. References herein to the D.C. Action record are cited as "D.C. Action" followed by the relevant entry number on the docket of the D.C. Action. References to docket entries in the present action are cited as "D.E." Citations to page numbers are to the page numbers in the legend at the top of docket entries.

prejudice on July 19, 2019.  D.C. Action, 2019 U.S. Dist. LEXIS 120571, at *29 (D.D.C. July

19, 2019) ("*D.D.C. Decision*").

AFGC's complaint in the D.C. Action also named as defendants five Angolan

individuals, including Antonio Francisco Andrade and two of his children (collectively, the

"Andrade Defendants").  The complaint alleged claims relating to a dispute concerning

apartment buildings in Luanda, Angola between the Andrade Defendants and Angolan

companies in which AFGC alleged it held indirect interests (the "Angolan indirect subsidiaries").

D.C. Action, D.E. 1, Compl. ¶¶ 27, 29-30, 35-50 (Ex. A).  AFGC sought damages based on

actions allegedly undertaken by the Andrade Defendants concerning those buildings.  *See id*. ¶¶

35-50, 54-55, 69-75, 97-99.

The D.C. Action included claims against Angola for having somehow contributed to an

alleged "expropriation" of the apartment buildings and for unjust enrichment, notwithstanding

that: (1) Angola had no role in the dispute between AFGC's Angolan indirect subsidiaries and

the Andrade Defendants; (2) Angola never obtained ownership or possession of the disputed

properties, which at all relevant times remained with either the Andrade Defendants or AFGC's

Angolan indirect subsidiaries; and (3) when AFGC's Angolan indirect subsidiaries sought

recourse from an Angolan court, the court granted their requested interim relief by ordering that

they be provisionally granted possession of the properties, and the Angolan authorities enforced

that relief by evicting Antonio Francisco Andrade from the disputed properties.  D.C. Action,

D.E. 42-1, Angola's Mot. to Dismiss Br. at 9, 12-13 (Ex. B).[2]

---

[2] The D.C. action also asserted claims for RICO violations, conspiracy, tortious interference with
contract, and conversion.  D.C. Action, D.E. 1, Compl. ¶¶ 138-169, 175-180 (Ex. A).

On December 21, 2018, Angola moved to dismiss the D.C. Action based on, *inter alia*, lack of subject matter and personal jurisdiction under the FSIA. Angola demonstrated that none of the exceptions to immunity that AFGC relied upon was applicable. Angola showed that:

(1)     AFGC could not rely upon the FSIA's commercial activity exception, 28 U.S.C. § 1605(a)(2), because: (a) AFGC had not alleged claims that were "based upon" an act or commercial activity of Angola, but instead on actions, such as the alleged "expropriation," that are quintessentially sovereign in nature; and (b) the alleged monetary losses suffered by AFGC and its U.S. shareholders did not qualify as direct effects in the United States. D.C. Action, D.E. 42-1, Angola's Mot. to Dismiss Br. at 16-23 (Ex. B); D.C. Action, D.E. 51, Angola's Mot. to Dismiss Reply Br. at 8-16 (Ex. D); and

(2)     None of AFGC's claims was based upon any act of Angola, and there was no basis for attributing the acts of the Andrade Defendants to Angola. D.C. Action, D.E. 42-1, Angola's Mot. to Dismiss Br. at 19-23 (Ex. B); D.C. Action, D.E. 51, Angola's Mot. to Dismiss Reply Br. at 10-13 (Ex. D).

AFGC's opposition did not present any compelling argument in response. Instead, it sought "leave to replead certain facts and allegations." D.C. Action, D.E. 44, Pl.'s Opp. to Mot. to Dismiss at 38-39 (Ex. C).

On July 19, 2019, the D.C. District Court granted Angola's motion to dismiss for lack of subject matter jurisdiction. *D.D.C. Decision* at *29. The D.C. District Court held that AFGC could not rely upon the FSIA's commercial activity exception, which AFGC had "[s]tretch[ed]" to "fit its jurisdictional needs" beyond the breaking point. *Id*. at *11. The D.C. District Court ruled that AFGC's claims were not "based upon" a commercial activity because the alleged acts

3

of Angola that supposedly contributed to the alleged expropriation were "quintessentially sovereign conduct not falling within the commercial activity exception."  *Id.* at *12.  The D.C. District Court held that AFGC's reliance on this exception also failed because "any losses AFGC stock and bond holders in the United States suffered are clearly insufficient to meet the 'direct effect' prong."  *Id.* at *11.  Moreover, the D.C. District Court rejected the very foundation of AFGC's case against Angola, namely that the alleged wrongful acts of the Andrade Defendants were "attributable to Angola."  *Id.* at *15-*17.  Their conduct therefore could not "form the basis for abrogating Angola's immunity under the FSIA."  *Id*. at *23.

## II.    The Alleged Settlement Agreement

On the same day that AFGC filed its unsuccessful opposition to Angola's motion to dismiss the D.C. Action, its Executive Chair, Scott Mortman, sent a letter to the President of Angola, requesting a meeting to discuss settlement of the D.C. Action.  D.E. 50-1.

Following Angola's receipt of that letter, the parties met in Lisbon, Portugal on February 12, 2019.  D.E. 50 ¶ 22.  According to AFGC, at the meeting Dr. Eduarda Rodrigues Neto, a Deputy Attorney General (*Sub-Procuradora Geral da República*) of Angola, made an oral commitment that Angola would pay $47.5 million to AFGC in return for a release of AFGC's claims to the allegedly expropriated property and dismissal of the D.C. Action with prejudice.  *See id*.  ¶¶ 29-34.  AFGC does not allege that there was a written settlement agreement that was signed by both parties.  According to AFGC, at the end of the February 12, 2019 meeting, it remained for the alleged agreement to be "memorialize[d] … in a more formal writing."  *Id.* ¶ 35.  This is evident from its counsel's letter of February 18, 2019, requesting "receipt of the draft written settlement agreement."  D.E. 50-8 at 3.  No such writing was drawn up, much less signed by Angola.  *See* D.E. 50 ¶¶ 38-42.

4

### III.    The Instant Action

#### A.    AFGC's Original Complaint

On May 16, 2019, with Angola's motion to dismiss the D.C. Action pending, AFGC commenced the present action.  Its Complaint asserted a claim for breach of the alleged settlement agreement that AFGC says was made at the Lisbon meeting.  D.E. 1 ¶¶ 22, 34, 52-55. The Complaint also asserted a claim for unjust enrichment that was materially identical to the unjust enrichment claim that AFGC asserted in the D.C. Action.  *Compare* D.E. 1 ¶¶ 56-62 *with* D.C. Action, D.E. 1, Compl. ¶¶ 181-85 (Ex. A).

#### B.    AFGC's Failed Attempt to Use This Case to Avoid Dismissal of the D.C. Action

On May 22, 2019, AFGC sought to voluntarily dismiss the D.C. Action under Fed. R. Civ. P. 41(a)(2), citing as the reason this recently filed action.  D.C. Action, D.E. 67-1, Pl.'s Voluntary Dismissal Mot. Br. at 2-3, 9 (Ex. E).  Angola opposed that motion on the ground that the D.C. District Court was required to adjudicate its pending motion to dismiss for lack of FSIA jurisdiction before reaching AFGC's motion for voluntary dismissal.  D.C. Action, D.E. 69, Angola's Opp. to Pl.'s Voluntary Dismissal Mot. at 12-15 (Ex. F).  Angola further argued that AFGC's tactical gambit should be rejected, as it would unfairly allow AFGC to sidestep Angola's motion to dismiss the D.C. Action, which had been pending for five months, and abandon the jurisdiction in which AFGC initially sought to press its claims against Angola.  *Id*. at 15-21.  When the D.C. District Court granted Angola's motion to dismiss the D.C. Action, it denied AFGC's voluntary dismissal motion as moot.  *D.D.C. Decision* at *29.[3]

---

[3] On August 16, 2019, AFGC appealed the judgment of the D.C. District Court to the Court of Appeals for the D.C. Circuit.  D.C. Action, D.E. 74, Notice of Appeal (Ex. G).  On October 11, 2019, AFGC moved to voluntarily dismiss that appeal, *with prejudice*, pursuant to Fed. R. App. P. 42(b).  AFGC's Mot. for Voluntary Dismissal, *Africa Growth Corporation v. Republic of*

### C.      Angola's Motion to Dismiss the Original Complaint in This Action

On August 30, 2019, Angola moved to dismiss the original complaint in this action under Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6).  D.E. 15.  Angola's motion assumed the truth of the factual allegations in AFGC's complaint.  *See, e.g*., D.E. 15 at 17, 18, 21, 23; *see also* D.E. 16 ¶ 10; D.E. 17 ¶ 5; D.E. 24 at 5, 8; D.E. 27 at 5, 8, 13, 14; D.E. 34 at 1-3; D.E. 40 at 1-7.  The motion was accompanied by an expert declaration concerning Portuguese contract law, which demonstrated that the alleged settlement agreement is void *ab initio*.  D.E. 16.  Angola sought dismissal based on the following grounds: (1) AFGC's unjust enrichment claim was barred by *res judicata* based on the dismissal of the D.C. Action; (2) this Court lacked subject matter jurisdiction because neither of the FSIA exceptions on which AFGC relied – the waiver and commercial activity exceptions – was applicable; (3) because the Court lacked subject matter jurisdiction, the Court also lacked personal jurisdiction over Angola; (4) venue was improper in this District; and (5) AFGC's complaint failed to state a claim upon which relief could be granted.  D.E. 15 at 13-25.

AFGC filed its opposition to Angola's motion to dismiss on October 14, 2019, D.E. 22, accompanied by a "joint declaration" of two Portuguese lawyers that asserted – with no citation to authority – that the alleged settlement agreement is enforceable under Portuguese law.  D.E. 22-1 ¶¶ 13-14.  Angola replied to that opposition on October 31, 2019.  D.E. 24.

On October 22, 2019, AFGC filed a motion for leave to take purported jurisdictional discovery, including a deposition of the President of Angola.  D.E. 23.  Angola opposed that

---

*Angola*, No. 19-7090 (D.C. Cir. Oct. 11, 2019).  Angola assented to the dismissal of AFGC's appeal with prejudice.  *Id.* at 2.  On October 23, 2019, the D.C. Circuit granted AFGC's motion and issued its mandate dismissing AFGC's appeal.  Order & Mandate, *Africa Growth Corporation v. Republic of Angola*, No. 19-7090 (D.C. Cir. Oct. 23, 2019).

motion on October 31, 2019, on the ground that none of the requested discovery was necessary
to resolve the dispositive jurisdictional and other legal issues raised by Angola's motion to
dismiss, which assumed the truth of the allegations in AFGC's complaint and thus could be
determined as a matter of law.  D.E. 27.

      This Court referred AFGC's motion for jurisdictional discovery to Magistrate Judge
Torres on November 14, 2019.  D.E. 36.  On November 25, 2019, Judge Torres denied the
motion, holding that even "assum[ing] every factual allegation to be true," AFGC's complaint
failed to establish that the commercial activity exception applied to its claims against Angola,
thus "eviscerat[ing] Plaintiff's request for jurisdictional discovery."  D.E. 38 at 4, 6-8.

      On December 9, 2019, AFGC appealed from Judge Torres's Order.  D.E. 39.  On
December 23, 2019, Angola filed its response to AFGC's appeal, D.E. 43.  AFGC filed its reply
on December 30, 2019.  D.E. 45.  The appeal was denied as moot upon the filing of AFGC's
Amended Complaint.  D.E. 49.

## D.    AFGC's Amended Complaint

      At 10:34 a.m. on February 17, 2020, a federal holiday and the last permissible day to
move to amend its pleadings under the Scheduling Order that the Court entered on December 17,
2019, counsel for AFGC emailed counsel for Angola announcing AFGC's intention to file a
motion for leave to file an amended complaint.  Declaration of Nicholas M. Renzler, Ex. A.
Counsel for AFGC did not include the proposed amended complaint or describe the proposed

7

amendments in more than general terms.[4]  AFGC requested a response by 3:00 p.m. the same day.  *Id.*

AFGC filed its motion for leave to amend the complaint later that day, certifying without context that "counsel for AFGC attempted to confer with counsel for Angola on February 17, 2020, by e-mail, regarding whether counsel for Angola objected to the filing of th[e] motion. Counsel for Angola did not respond."  D.E. 47 at 5.  The motion was granted on February 25, 2020.  D.E. 48.  *See also* D.E. 50 (filing Amended Complaint).  The Amended Complaint differs from the original only in that it: (1) abandons AFGC's invocation of the waiver exception to immunity under the FSIA, *id.* ¶¶ 8-12; (2) seeks an additional $47.5 million in compensatory damages, *id.* ¶ 18 (an amendment that was not foreshadowed in its counsel's email); (3) alleges additional facts in support of AFGC's reliance on the commercial activity exception to the FSIA, *id.* ¶¶ 4-5, 15-17; and (4) changes the factual basis for the unjust enrichment claim such that it now, in substance, replicates the breach of contract claim.  *Id.* ¶¶ 18-19.[5]

For the reasons stated below, none of these amendments salvages this action, which must be dismissed under Fed. R. Civ. P. 12(b)(1) (2), (3) and (6).

---

[4] AFGC's counsel simply stated that the amendments would "address the following: 1. Include new factual allegations; 2. Amend the unjust enrichment count; and 3. Remove reference to waiver of immunity."  Renzler Decl., Ex. A.

[5] None of the English translations provided by AFGC of its exhibits that are originally in Portuguese are certified translations.  Angola reserves its right to submit revised and certified translations.

**ARGUMENT**

**I.      The Court Lacks Subject Matter Jurisdiction Over AFGC's Claims**

Even taking all of the Amended Complaint's allegations as true, the action must be

dismissed for lack of subject matter jurisdiction because AFGC's reliance on the commercial

activity exception, FSIA §§ 1605(a)(2) – the sole exception upon which AFGC now relies – is

unavailing.

United States courts have subject matter jurisdiction over an action against a foreign state

only as provided in the FSIA.  *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (citing

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 433 (1989)); *Samco Global

Arms, Inc. v. Arita*, 395 F.3d 1212, 1214 (11th Cir. 2005).  Section 1604 of the FSIA states the

bedrock presumption of foreign sovereign immunity:

> Subject to existing international agreements to which the United States is a party
> at the time of enactment of this Act, a foreign state shall be immune from the
> jurisdiction of the courts of the United States … except as provided in sections
> 1605-1607 of this chapter.

The jurisdictional immunity in §1604 is unqualified; if none of the exceptions in §§1605

to 1607 applies, there is no subject matter jurisdiction.  *Amerada Hess*, 488 U.S. at 434-39;

*Butler v. Sukhoi Co.*, 579 F.3d 1307, 1312-13 (11th Cir. 2009).  Personal jurisdiction over a

foreign state will exist only if there is subject matter jurisdiction and service of process has been

effected in accordance with FSIA §1608.  28 U.S.C. § 1330(b); *Arita*, 395 F.3d at 1214.

Attacks on subject matter jurisdiction under the FSIA come in two forms: "(1) facial

attacks on the complaint, which require the court to draw all reasonable inferences in favor of the

plaintiff to see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction; and

(2) factual attacks, which challenge the existence of subject matter jurisdiction in fact and require

the court to consider matters outside the pleadings because no presumption of truthfulness

9

attaches to plaintiff's allegations." *Sequeira v. Republic of Nicar*., Case No. 16-25052, 2019 U.S. Dist. LEXIS 25182, at \*14-15 (S.D. Fla. Feb. 14, 2019) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

Here, Angola makes a facial attack on AFGC's Amended Complaint and thus "does not contest the [complaint's] alleged jurisdictional facts, but rather, challenges their legal adequacy." *Butler*, 579 F.3d at 1313.[6]  Where a facial attack is made, the plaintiff bears the burden to "present[] a prima facie case that jurisdiction exist[s]." *Id.* at 1313.  To decide whether AFGC has met that burden, the Court must review "the complaint's jurisdictional allegations to determine whether they [are] sufficient to eliminate [Angola's] presumptive immunity." *Id*.; *see also S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292, 1300 (11th Cir. 2000).

 Applying this test, AFGC fails to establish that the FSIA's commercial activity exception applies.  D.E. 50 ¶¶ 10-12.  The third prong of that exception to sovereign immunity, which AFGC invokes, applies when the action is based "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."  28 U.S.C. § 1605(a)(2).  None of the essential requirements of this prong of the exception is satisfied here.

## A.    The Action Is Not "Based Upon" an Act Outside the United States in Connection with Commercial Activity of Angola

For the commercial activity exception to apply, the action must be "based upon" a commercial activity.  *Id.*  To determine whether an action meets that test, the Court must identify "the 'particular conduct' that constitutes the 'gravamen' of the suit" and determine whether that

---

[6] Angola reserves its rights to contest the factual allegations of the Amended Complaint, should it ever become necessary or appropriate to do so.

conduct is commercial in nature. *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 396

(2015). Making that determination requires "zero[ing] in on the core of [Plaintiff's] suit." *Id*.

The Supreme Court has established that "a state engages in commercial activity" only in those

circumstances where it "exercises … powers that can also be exercised by private citizens, as

distinct from those powers peculiar to sovereigns." *Nelson*, 507 U.S. at 360 (internal quotation

marks omitted) (quoting *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992)).

The core of AFGC's Amended Complaint is the alleged expropriation of AFGC's

Angolan indirect subsidiaries' property and an alleged agreement to compensate for that alleged

taking. As AFGC succinctly puts it, the "dispute between AFGC and Angola … ar[ises] out of

the uncompensated taking of the AFGC Angolan Assets." *Id.* ¶ 51. The Amended Complaint

thus alleges that the action "is based on" an alleged "agreement pursuant to which Angola

committed to paying USD 47.5 million to AFGC … for the transfer of all rights to the property

owned by AFGC, which is located in Luanda, Angola … [and] AFGC agreed to relinquish all of

its rights, title, and any potential claims to said property." D.E. 50 ¶ 10. That property is the

property which was allegedly taken by Angola's "unlawful seizure and expropriation." *Id.* ¶¶

15-16. The alleged agreement was, according to the Amended Complaint, intended to

compensate for this alleged expropriation. *Id*. These alleged acts are sovereign in nature and do

not implicate the commercial activity exception.

A foreign sovereign's expropriation of property is a quintessentially sovereign act. As

the Eleventh Circuit has held, "[c]onfiscation of real property is a public act because private

actors are not allowed to engage in 'takings' in the manner that governments are." *Beg v.

Islamic Republic of Pak.*, 353 F.3d 1323, 1326 (11th Cir. 2003); *see Banco Nacional de Cuba v.

Sabbatino*, 376 U.S. 398, 431 (1964) (recognizing the governmental nature of power to take

property).  "[E]xpropriation [is thus] 'a decidedly sovereign – rather than commercial –
activity.'"  *Devengoechea v. Bolivarian Republic of Venez.*, 889 F.3d 1213, 1229 (11th Cir.
2018) (quoting *Garb v. Republic of Pol.*, 440 F.3d 579, 586 (2d Cir. 2006)).

The Eleventh Circuit has also made clear that the sovereign nature of expropriation
includes agreements "to compensate property owners for takings."  *Beg*, 353 F.3d at 1327.  *Beg*
thus rejected the contention that a foreign sovereign's "agreement to compensate" for an alleged
expropriation was a "commercial activity" precisely because it is not "the type of activity in
which private actors engage nor is it a market transaction."  *Id*. at 1327-28 (citing *United States
v. Carmack*, 329 U.S. 230, 236-37 (1946) and *Weltover, Inc*., 504 U.S. at 614); *cf. Tex. Dep't of
Health v. Neal*, No. 03-09-00574-CV, 2011 Tex. App. LEXIS 3460, at \*10-\*16 (Tex. App. May
6, 2011) (holding sovereign immunity applied to action for breach of settlement agreement
where state was immune from underlying suit).

These authorities leave no doubt that the gravamen of AFGC's suit is sovereign activity.
The core of AFGC's action is the alleged "unlawful seizure and expropriation of assets and real
property," D.E. 50 ¶ 2, and a dispute concerning an alleged agreement to provide AFGC with
"compensation for the" allegedly expropriated "AFGC Angolan Assets."  *Id*. ¶ 58; *see also* D.E.
50-9 at 1 (the alleged agreement was to provide "financial compensation" for alleged "acts of
expropriation").  Under this Circuit's binding case law, these are sovereign acts that do not fall
within the ambit of the commercial activity exception.  *Beg*, 353 F.3d at 1327.

### B.    AFGC Has Not Alleged a Direct Effect in the United States

AFGC's reliance on the third prong of the commercial activity exception fails for another
reason.  That prong requires a direct effect in the United States.  AFGC tries to locate such an
effect in: (1) the alleged failure of Angola to make payment in Florida in accordance with the
supposed terms of the alleged settlement agreement; and (2) events that are alleged to have led to

the SEC delisting AFGC's U.S. public securities, specifically AFGC's failure to obtain audited financial statements or to make required filings with the SEC, which, in turn, are alleged to have caused financial losses to "AFGC and its U.S. shareholders." D.E. 50 ¶¶ 11-12. None is a direct effect under § 1605(a)(2).

The alleged failure to make payment in Florida pursuant to the alleged settlement agreement could not have caused a direct effect in the United States because any such agreement is void as a matter of law. Portuguese law governs contracts concluded in Portugal, which is where AFGC alleges the contract was made. *Id.* ¶¶ 2, 21-37.[7] The expert declaration of Professor Margarida Lima Rego, Associate Professor of Law and Vice Dean of the NOVA School of Law in Lisbon, Portugal, explains that under Portuguese law settlement agreements that are not executed in writing by both parties are void *ab initio*. Decl. of Margarida Lima Rego ¶¶ 20-29.[8] In particular, Article 1250 of the Portuguese Civil Code – which governs the validity

---

[7] Portuguese law governs "whether a valid contract was formed" because "Florida adheres to the *lex loci contractus* doctrine." *Muniz v. Gca Servs. Grp.*, No. 3:05-cv-172-J-33MMH, 2006 U.S. Dist. LEXIS 52194, at *13 (M.D. Fla. July 28, 2006). The law applicable to a contract's validity *ab initio* is the place "where the last act necessary to complete the contract is done," which for "oral contracts … [is] the state in which the oral agreement was reached." *Motmanco, Inc. v. McDonald's Corp.*, No. 3:04-cv-270-J-99HTS, 2005 U.S. Dist. LEXIS 33965, at *11 (M.D. Fla. Mar. 28, 2005); *see also Goodman v. Olsen*, 305 So. 2d 753, 755 (Fla. 1974) (applying New York law to validity of a contract executed in New York); *Wingold v. Horowitz*, 292 So. 2d 585, 586 (Fla. 1974) (validity of contract executed in the Bahamas governed by Bahamian law). Moreover, the question of whether a valid contract was formed is a question of law that can, and should, be resolved at the motion to dismiss stage. *Kolodziej v. Mason*, 774 F.3d 736, 740 (11th Cir. 2014); *Acumen Constr., Inc. v. Neher*, 616 So. 2d 98, 99 (Fla. Dist. Ct. App. 1993).

[8] This Court is able to resolve the issues of foreign law raised in this motion. Foreign law is a question of law, not fact, *see* Fed. R. Civ. P. 44.1, and courts routinely resolve dispositive foreign law issues at the motion to dismiss stage by referring to expert declarations. *See, e.g*., *Prewitt Enters. v. OPEC*, 353 F.3d 916, 925 (11th Cir. 2003); *De Fontbrune v. Wofsy*, 838 F.3d 992, 998 (9th Cir. 2016) ("Rule 44.1 authorizes district courts to consider foreign legal materials outside the pleadings in ruling on a motion to dismiss."); *Willcox v. Lloyds TSB Bank, PLC*, No. 13-00508 ACK-RLP, 2014 U.S. Dist. LEXIS 176706 (D. Haw. Dec. 23, 2014).

of settlement agreements – provides that a settlement agreement "must be made" in writing to be valid.  Rego Decl. Ex. 2, art. 1250.  Further, only three forms of contractual documents satisfy this made-in-writing requirement: (1) a public deed, which must be executed by a notary public; (2) a notarized private deed, which must also be notarized; and (3) an un-notarized private deed, which must be signed by both parties to have any legal effect.  Rego Decl. ¶¶ 16 n.4, 25.

Thus, the Amended Complaint fails as a matter of law because there was – at most – an oral agreement, not a written agreement signed by both parties.  *See* D.E. 50 ¶ 34 (alleging Angola's representative orally "confirmed and agreed to the terms of the Agreement as read"); D.E. 50-6 (informal writing only signed by AFGC).  The alleged agreement upon which AFGC relies therefore does not satisfy the essential requirements of the applicable law.  Rego Decl. ¶¶ 24-31.

Moreover, the alleged agreement is void *ab initio* for another reason.  Professor Rego explains that because it purports to dispose of rights in immoveable property (the disputed buildings in Luanda), it needed to have been "executed by means of a public deed or by notarized private deed."  *Id*. ¶ 30.  The Amended Complaint, however, does not allege the execution of a public deed or notarized private deed.  *See* D.E. 50 ¶¶ 10, 32-35, 38-42; D.E. 50-8 at 3. [9]

In sum, the alleged settlement agreement is null and void.  Accordingly, an alleged failure to deposit funds in Florida pursuant to it could not have caused a direct effect in the United States.

---

[9] Even if Florida law applied, there still would be no valid contract.  Florida's Statute of Frauds requires that contracts "transfer[ring] of … rights to … property" be made in writing and signed by the party to be charged.  Fla. Stat. § 725.01; *Olsen v. O'Connell*, 466 So. 2d 352, 355 (Fla. Dist. Ct. App. 2d Dist. 1985).

AFGC's scattershot attempt to establish other direct effects in the U.S. similarly fails. AFGC alleges that Angola's breach of the purported settlement agreement "prevented AFGC from obtaining audited financial statements and making the required 10k and 10Q filings before the SEC." D.E. 50 ¶ 52. But neither was a direct result of any action by Angola. Rather, AFGC *itself* elected not to obtain audited financial statements or to make filings with the SEC. The Amended Complaint discloses AFGC's reason for deciding not to take those steps: doing so would have constrained AFGC to "reduce or even write off the value of the AFGC Angolan Assets," which AFGC declined to do because it would have caused a "drop in the price of AFGC's shares." *Id.* ¶ 52.

Accordingly, neither the failure to obtain audited financial statements nor the failure to file required reports with the SEC is a direct effect under the FSIA. For an effect to be "direct," it must "follow[] as an immediate consequence of the defendant's … activity." *Weltover*, 507 U.S. at 618 (internal quotes omitted). This means that "the foreign sovereign's actions, and not the plaintiff's, must have caused the effects in the United States." *Westfield v. Fed. Republic of Germany*, 633 F.3d 409, 417 (6th Cir. 2011); *see also Guevara v. Republic of Peru*, 608 F.3d 1297, 1310 (11th Cir. 2010) (refusing to find an effect to be direct where it was "an immediate consequence" of plaintiff's own actions rather than of the foreign state). Here, the alleged effects identified by AFGC are the immediate product of actions by AFGC itself. *Am. Telecom Co., LLC v. Republic of Lebanon*, 501 F.3d 534, 541 (6th Cir. 2007); *Rogers v. Petroleo Brasileiro*, S.A., 673 F.3d 131, 139 (2d Cir. 2012).

AFGC's attempt to base a direct effect on alleged harm to AFGC's shareholders fails just as badly. The D.C. District Court already rejected this very argument in the D.C. Action, holding that "any losses AFGC stock and bond holders in the United States suffered are clearly

15

insufficient to meet the 'direct effect' prong." *D.D.C. Decision* at *11 (citing *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1184 (D.C. Cir. 2013)).  AFGC is collaterally estopped from re-litigating this issue in this action.  *Jacobs v. Estefan*, No. 15-22393-CV, 2016 U.S. Dist. LEXIS 193682, *9-*10 (S.D. Fla. July 6, 2016).

## II.    The Court Lacks Personal Jurisdiction Over Angola

Because this Court lacks subject matter jurisdiction, it also lacks personal jurisdiction over Angola.  Personal jurisdiction over foreign states depends on an applicable exception to immunity under the FSIA (plus proper service of process), and no exception applies here.  28 U.S.C. § 1330(b); *Arita,* 395 F.3d at 1214 (citing *Weltover*, 504 U.S. at 611).  The Amended Complaint should therefore be dismissed under Rule 12(b)(2).

## III.    Venue is Improper in the Southern District of Florida

This action must also be dismissed pursuant to Rule 12(b)(3) because venue is proper only in the District of Columbia, where AFGC originally filed suit against Angola.  The FSIA venue statute, 28 U.S.C. § 1391(f), provides for venue in an action against a foreign state:

> (1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;
>
> (2) in any judicial district in which the vessel or cargo of a foreign state is situated, if the claim is asserted under section 1605(b) of this title;
>
> (3) in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state as defined in section 1603(b) of this title; or
>
> (4) in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.

The underlying events in this action are alleged to have occurred in Angola and Portugal, not Florida.  *See* D.E. 50 ¶¶ 14-42, 57-65.  AFGC is a Nevada corporation, *id.* ¶ 6, and pleads no connection to Florida.  The prior action was in the District of Columbia.  AFGC nevertheless

invokes subsection (f)(1), alleging that venue is proper in this District because Angola allegedly "fail[ed] to perform" the alleged settlement agreement "through payment of USD 47.5 million due and owing in Miami-Dade County, Florida," where AFGC's lawyer happens to have offices. *Id.* ¶ 13.

       This ploy fails.  Because the alleged agreement is null and void, Angola never had an obligation to make a payment in Miami or anywhere else.  It therefore could not "fail[] to perform" any obligation in this District and consequently there is no omission giving rise to a claim that would support venue under § 1391(f)(1).  Nor could any argument be made that subsections (2) or (3) of § 1391(f) is applicable.  Under subsection (f)(4), therefore, venue lies only in the District of Columbia, the "dedicated venue for actions against foreign states." *Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 332 (D.C. Cir. 2003).  This, of course, is where AFGC first brought suit against Angola.

## IV.    AFGC Has Failed to State a Claim for Relief

     In considering a motion to dismiss under Rule 12(b)(6), a complaint's allegations must be accepted as true. *Hawthorne v. MacAdjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).  However, to survive a motion to dismiss, a complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*  Unless the "complaint states a plausible claim for relief," it must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Assuming *arguendo* that the

Court finds it has jurisdiction to consider AFGC's claims (which it does not), and that this is a proper venue (it is not), AFGC fails to state any claim upon which relief can be granted.[10]

### A.     Breach of Contract (Count I)

There is no valid contract under the governing Portuguese law because the alleged settlement agreement was not made in a public deed or notarized private deed, or for that matter in any writing signed by both parties.  *Supra* Section I(B).  The breach of contract claim thus must be dismissed.  *Behrman v. Allstate Life Ins. Co.*, No. 04-60926-CIV, 2005 U.S. Dist. LEXIS 7262, at *13 (S.D. Fla. Mar. 23, 2005) (dismissing breach of contract claim under Rule 12(b)(6) where plaintiff failed to identify valid contract); *Lawrence v. Richman Group Capital Corp.*, 358 F. Supp. 2d 29, 39 (D. Conn. 2005) (dismissing breach of contract claim under Rule 12(b)(6) where alleged contract was invalid).

### B.     Unjust Enrichment (Count II)

In its original complaint, AFGC attempted to assert an unjust enrichment claim that was substantively identical to the unjust enrichment claim that was dismissed in the D.C. Action. D.C. Action, D.E. 1, Compl. ¶¶ 182-183 (Ex. A); D.E. 1 ¶ 57.  Angola's motion to dismiss demonstrated that the unjust enrichment claim was barred by *res judicata.*  D.E. 15 at 14-15, 24-25.  Conceding defeat, AFGC now tries to repackage its unjust enrichment claim as one that rehashes its breach of contract claim.  *Compare* D.E. 50 ¶ 58 (alleging Angola breached an agreement to "pay AFGC USD 47.5 million in exchange for and as compensation for the AFGC Angolan Assets") *with* D.E. 50 ¶ 62 (alleging Angola "wrongfully retained USD 47.5 million

---

[10] Angola reserves all of its rights to assert any other defense to AFGC's breach of contract and unjust enrichment claims, under Portuguese, Angolan and/or U.S. law, should it ever become necessary or appropriate to do so.

that Angola had agreed to pay AFGC … in full and final resolution of all disputes between the parties concerning the AFGC Angolan Assets").

     This claim must be dismissed.  Under Portuguese law, where a plaintiff alleges facts that concern an alleged contract, as a matter of substantive law a claim for unjust enrichment "is not available as a remedy" because "the law of contracts occupies the field."  Rego Decl. ¶ 39.[11]

     Moreover, even if the claim were not barred, AFGC has failed to plead the required elements for unjust enrichment under Portuguese law.  Portuguese law requires the plaintiff to prove that "(i) that the defendant has obtained an advantage measurable in money; (ii) that this advantage was obtained at the expense of the plaintiff; and (iii) that this advantage is devoid of any legal justification."  Rego Decl. ¶ 35.  AFGC, however, has not alleged that Angola "obtained an advantage measurable in money."  Instead, AFGC merely alleges that it "agree[d]" to confer certain benefits on Angola; it does not allege that AFGC actually provided those benefits.  D.E. 50 ¶ 63.

     This is not sufficient under Portuguese law.  As Professor Rego explains, an "unperformed, null and void contractual promise is not an advantage measurable in money within the meaning of Article 473 of the Portuguese Civil Code."  Rego Decl. ¶ 42.

---

[11] Portuguese law governs here because, under Florida conflicts of law rules, the *lex loci contractus* rule applies to unjust enrichment claims.  *See Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1119-20 (11th Cir. 1996); *Walewski v. Zenimax Media, Inc.*, No. 6:11-cv-1178-Orl-28DAB, 2012 U.S. Dist. LEXIS 33181, at *22-25 (M.D. Fla. Jan. 27, 2012); *Gilman v. John Hancock Variable Life Ins. Co.*, No. CA 02-00051 AB, 2003 Fla. Cir. LEXIS 1116, at * 33 (Fla. Cir. Ct. Oct. 20, 2003).  As explained in footnote 7, supra, the *loci contractus* is Portugal.

19

Accordingly, the claim for unjust enrichment fails because it does not allege the facts that

Portuguese law requires for a plaintiff to state a claim.[12]

**CONCLUSION**

For the foregoing reasons, this action should be dismissed with prejudice.

Dated: March 10, 2020                    Respectfully submitted,


                                         REPUBLIC OF ANGOLA


                                         By its attorneys,
                                         /s/ Brian M. Silverio
                                         Brian M. Silverio (FL Bar No. 0183301)
                                         Silverio & Hall, P.A.
                                         255 8th Street South
                                         Naples, FL. 34102
                                         Tel: 239-649-1001
                                         Fax: 239-649-1972
                                         bsilverio@silveriohall.com

---

[12] The result would be the same if Florida law applied.  The elements for unjust enrichment are: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc*., 680 F.3d 1329, 1337 (11th Cir. 2012) (citing *Florida Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004)).  As under Portuguese law, AFGC has not alleged that it conferred a benefit on Angola.  *See* D.E. 50 ¶ 63.  The claim thus fails as a matter of law.  *See Am. Safety Ins. Serv. v. Griggs*, 959 So. 2d 322, 331 (Fla. Dist. Ct. App. 5th Dist. 2007) (unjust enrichment requires that "the defendant receive[] something of value or benefit[] from the service supplied").

Janis H. Brennan (*pro hac vice*)
Nicholas M. Renzler (*pro hac vice*)
FOLEY HOAG LLP
1717 K Street, NW
Washington, DC 20006-5350
Tel:  202-223-1200
Fax: 202-785-6687
jhbrennan@foleyhoag.com
nrenzler@foleyhoag.com

Andrew Z. Schwartz (*pro hac vice*)
Andrew B. Loewenstein (*pro hac vice*)
Christopher Modlish (*pro hac vice*)
FOLEY HOAG LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
Tel: 617-832-1000
Fax: 617-832-7000
aschwartz@foleyhoag.com
aloewenstein@foleyhoag.com
cmodlish@foleyhoag.com

*Attorneys for Defendant Republic of Angola*

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

on March 10, 2020.

/s/ *Brian M. Silverio*
Brian M. Silverio