IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-21995-Civ-WILLIAMS/TORRES

Africa Growth Corporation,

    Plaintiff,

    v.

Republic of Angola,

    Defendant.
_____/

**PLAINTIFF AFRICA GROWTH CORPORATION'S REPLY IN SUPPORT OF ITS
OBJECTIONS TO REPORT AND RECOMMENDATION
<u>ON DEFENDANT'S MOTION TO DISMISS</u>**

Plaintiff Africa Growth Corporation ("**AFGC**"), pursuant to the Court's Order [DE 103], hereby files its Reply in support of its Objections (the "**Objections**") to the Report and Recommendation (the "**Report**") [DE 92] on Defendant's Republic of Angola ("**Angola**") Motion to Dismiss [DE 51] ("**Motion to Dismiss**").

## I. INTRODUCTION

This case is simple. Angola breached a contract in which it agreed to pay $47.5 million in the United States, in exchange for AFGC's agreement to cease its lobbying efforts (absolutely not sovereign in nature), dismiss ongoing litigation in the United States (determined not to be sovereign), relinquish all rights or claims to property in exchange for money (a commercial act), and other terms. Entry into a settlement agreement between Angola and AFGC, an American company (the "**Agreement**") is not a quintessentially sovereign act. Angola engaged in conduct just as any private party, and that conduct falls under the commercial activity exception of the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 ("**FSIA**"), which subjects Angola to the jurisdiction of this Court. The inquiry stops here.

Angola, however, argues there is more analysis to be done. And yet, all roads lead to Rome. Even if the Court were to consider the underlying conduct, jurisdiction is proper over Angola. First, the settled claims were found not to be based on an "expropriation," as evidenced by, *inter alia*, the binding decision of the Chief Judge of the United States District Court for the District of Columbia (the "**D.C. Court**"). Second, the title deed produced by AFGC identifies the owner not as Angola, but an individual, Natasha Andrade Santos – a critical fact which Angola has failed to refute. Third, the Agreement included AFGC relinquishing all rights and claims to the Angolan properties – if this were a quintessential expropriation, Angola would have no need to have AFGC release any of its rights. *See* [DE 50-6]. Fourth, the Agreement concerned other

commercial acts, such as the dismissal of litigation, and ceasing of lobbying efforts, which Angola had a strong interest in ending to protect its image before the global capital markets and before foreign sovereign credit agencies.

By entering into the Agreement, Angola engaged in a distinct commercial activity, causing direct effects in the United States, and therefore the commercial activity exception applies. *Beg v. Islamic Republic of Pakistan*, 353 F.3d 1323 (11th Cir. 2003), on which the Magistrate relied, and on which Angola heavily relies, is inapplicable. Angola did not take and retain property (the property is titled in the name of an individual), and Angola did not exercise sovereign powers to compensate AFGC for its loss. Angola, ***just as any private actor***, voluntarily requested and met with AFGC to resolve all issues and disputes between the parties – including the termination of AFGC's public relations efforts, lobbying efforts, and a cessation of civil litigation. Angola's entry into the Agreement was not a peculiarly sovereign act. For example, the private actors responsible for taking the Angolan real estate could have settled their private matter with AFGC if they wanted to.[1] Those private actors could have personally agreed to pay the sum of $47.5 million in exchange for AFGC relinquishing its rights to the Angolan property dismissing the U.S. litigation, and ceasing lobbying efforts. The fact that private individuals could have settled this matter in the same way Angola agreed to do so here negates Angola's argument that the Agreement was sovereign in nature.

A settlement agreement is a type of commercial activity not limited to sovereigns. *See Fontana v. Republic of Argentina,* 962 F.3d 667, 670 (2d Cir. 2020) ("Argentina's settlement with plaintiffs . . . falls within the commercial activity exception of the FSIA and is therefore not

---

[1] In considering the inquiry of jurisdiction over Angola, the D.C. Court found that Ms. Santos' conduct of taking AFGC's property through fraud and force, was ***not*** attributable to Angola.

barred by sovereign immunity."); *Figueroa v. Ministry for Foreign Affairs of Sweden*, 222 F. Supp. 3d 304, 317 (S.D.N.Y. 2016) ("[D]efendants breached their obligations as set forth in a new [tolling] contract wholly separate and apart from the underlying [sovereign] employment agreement."); *United States v. Moats*, 961 F.2d 1198, 1205 (5th Cir. 1992) (**"The negotiation of contracts, including entry into a settlement agreement, clearly is the type of act performed by private persons."**) (emphasis added). Angola's acts in entering into, and breaching, the Agreement, are commercial and not uniquely sovereign. Angola has reaped the benefit of the bargain at zero cost. Justice demands that this case proceed.

## II.  MEMORANDUM OF LAW

### A.  Angola Engaged in "Commercial Activity" by Making, and Breaking, the Settlement Agreement

Analyzing the Amended Complaint, and the facts, in the light most favorable to AFGC (which the Court is required to do), the Agreement was in no way based on an expropriation. Angola itself has previously argued that position in the D.C. Action. Whether the D.C. Action involved allegations of expropriation (ultimately determined ***not to be expropriation***) is irrelevant. By agreeing to pay money to AFGC in the United States, in exchange for the dismissal of ongoing U.S. litigation, terminating lobbying efforts, and AFGC relinquishing its rights to property, Angola acted the same way any private actor would; it engaged in commercial activity, and AFGC's suit is based on that activity.

#### 1.  *This Action Is Based on Angola's Commercial Activity and Acts Related to That Activity*

Angola is not immune from suit for breach of the Agreement because entering into the Agreement is a "commercial activity" and this Action is based on "an act . . . in connection" with that activity. 28 U.S.C. § 1605(a)(2). "[A]n action is 'based upon' the 'particular conduct' that

constitutes the 'gravamen' of the suit;" *i.e.*, the conduct that causes the injury. *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 396 (2015) (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 356-58 (1993)). The "activity" at issue here is Angola's conduct in breaching the Agreement. The gravamen of AFGC's suit is Angola's failure to honor its contractual obligations. AFGC's injuries flow directly from Angola's breach of the Agreement and Angola's failure to deposit monies (in U.S. funds) in AFGC's Florida counsel's bank account.

### 2. *Angola's Breach of the Agreement Is a Commercial Activity*

It is well established that the making and breaking of contracts is commercial activity. A settlement agreement is no different, and certainly is not a quintessential sovereign activity. *See* [DE 59 at 13-14; DE 70]. Cases which center around a government expropriation such as *Beg* are entirely inapposite. *Beg* did not involve a settlement agreement to dismiss U.S. litigation in exchange for payment of money into the United States. *See* 353 F.3d 1323. In *Beg*, the Pakistani government exercised its eminent domain powers to take land. Here, however, Angola did not exercise its eminent domain powers, and the real estate was actually taken by individuals through fraud and forgery, which is a point Angola argued vigorously in the D.C. Action and the court ruled on. *Id.* In *Beg*, the Pakistani government used the land for military use. Here, however, Angola has not even alleged it has used the property for ***any*** use, much less for a governmental purpose. In *Beg*, the Pakistani government owned the property. Here, however, the property is titled in the name of a private individual. Angola has failed to address the deed showing that the title is in the name of Ms. Santos, and not the government of Angola. *See id.* In *Beg*, the Pakistani government promised to provide another parcel of land ***in Pakistan*** – here, however, Angola entered into an Agreement to pay $47.5 million ***in the United States***, and in exchange for dismissal of ongoing litigation ***in the United States***, and ceasing lobbying efforts including those

***in the United States***. *Beg* did not involve a settlement agreement reduced to writing, one which was witnessed and certified by a third party, or the payment of money in order to cease lobbying efforts, or property which was titled in an individual's name, and which the government did not use for a government purpose or benefit. *See id.*

The ***focus*** of the inquiry is the "act" upon which Plaintiff is suing, and here the "act" is Angola's breach of contract and failure to pay $47.5 million (and not the underlying conduct). In a case involving a government's agreement to pay a reward for information to help capture a fugitive, the court found the activity to be commercial despite the underlying sovereign act of pursuing a fugitive. *See Guevara v. Republic of Peru*, 468 F.3d 1289, 1299 (11th Cir. 2006) ("The core of a contract is the parties' performance obligations, what they bargained for . . . The FSIA tells us that '[t]he commercial character of an activity shall be determined by reference to the nature of the . . . act, rather than by reference to its purpose.'"). In addition, *Figueroa* stands squarely for the proposition that the Court should not look to the underlying conduct. There the underlying conduct was found to be sovereign in nature but the tolling agreement which concerned this underlying conduct was found to be commercial in nature, ***despite the fact that the tolling agreement was based on the underlying <u>sovereign</u> claims***. *See Figueroa*, 222 F. Supp. 3d at 317 ("<u>It is irrelevant that the plaintiff's underlying employment relationship with the defendants was noncommercial in nature</u> because the tolling agreement was a distinct transaction that is commercial in nature.") (emphasis added). *Figueroa* undercuts Angola's hollow argument that the Court must first look to the underlying claims to see if they are commercial in nature. Based on Angola's logic, the *Figueroa* court should have looked to the sovereign nature of the claims being tolled, and would have determined that the tolling agreement was unenforceable in U.S. courts, but the *Figueroa* court starkly reached the opposite conclusion. Like the tolling

agreement in *Figueroa*, the Agreement here constitutes "a distinct transaction that is commercial in nature," reached at a time different from the underlying claims, and constitutes a separate transaction that subjects Angola to jurisdiction (***regardless*** of whether or not the settled claims – like the tolled claims in *Figueroa* – were sovereign in nature).

        **B.**      **The Agreement Is Not Based on an Expropriation**

Even if the Court were to look to the underlying claims, it is clear that the Agreement does not concern an expropriation. Angola cannot ignore, and has presented zero evidence or logic, to refute AFGC's evidence that the underlying conduct was commercial in nature because the property was: (i) taken by individuals through fraud and forgery; (ii) not taken pursuant to an Angolan proclamation, edict, or other act of eminent domain; (iii) titled in the name of an individual; and (iv) not used or held directly for the benefit and profit of Angola. As Angola itself admits in its Response to AFGC's Objections to the Report, "private parties . . . cannot expropriate real estate or other property." [DE 102 at 11]. However, private parties can convert property through fraud and forgery. Angola itself argued that it did not expropriate property in the D.C. Action, and it is now Angola's artful pleading and wish that the Court will overlook that fact. Considering the evidence presented, and considering the D.C. Court's decision, Angola's argument that the Agreement was based on an "expropriation" has no merit.

In the D.C. Action, Angola argued that there was no expropriation, and the D.C. Court agreed. This is neither "sophistry" nor magic. These are straightforward facts. As decided by the D.C. Court when analyzing jurisdiction over Angola, the underlying acts were performed by individuals not attributable to Angola, and it is improper for Angola to argue the opposite conclusion now. Collateral estoppel prevents the relitigation of this issue, and prevents Angola from taking precisely the opposite position here as it did in the D.C. Action with regard to

whether Angola expropriated the property. *See, e.g., Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 336 n.23, 99 S. Ct. 645, 654 n.23 (1979).

## II.  Three Additional Grounds Not Reached by Judge Torres

In its Response, Angola raises three additional "grounds" in support of its Motion to Dismiss, which were not reached by the Magistrate Judge. However, each of these "grounds" is without merit. First, Angola argues that the Agreement could not cause a direct effect in the U.S. because it is void under Portuguese law. This argument is nonsensical because the Agreement did in fact cause direct effects here, including the dismissal of U.S. litigation, the damages caused by Angola's failure to pay funds in the U.S. and the cessation of lobbying in the U.S.. Moreover, AFGC has presented expert testimony that the Agreement is valid, whether under Portuguese law, Angolan law, or otherwise. *See* [DE 59 at 9-10]; *see also* [DE 59-1]. Second, Angola argues that venue is improper despite the fact that the payment was required to be made to AFGC's Florida counsel, and caused damage in Florida. Third, Angola's argument that unjust enrichment is unavailable fails because it ignores expert testimony presented by AFGC that the Agreement is valid and that unjust enrichment is proper as an alternate form of pleading. *See id.*

## III.  CONCLUSION

Angola's entry into, and breach of, the Agreement falls under the commercial activity exception of the FSIA. Instead of following relevant precedent, Angola would have the Court create new law, and establish a new class of settlement agreements which resolve U.S. litigation, require payment in the U.S., and yet which would be unenforceable by U.S. Courts. Such a conclusion runs contrary to our system of justice, and contrary to the established case law and the facts at issue here. Angola has a long history of breaching contracts, and U.S. Courts have stood strong to ensure justice prevails. This court should as well.

-8-

    Dated: September 18, 2020.            Respectfully submitted,

                                                    SHUTTS & BOWEN LLP

                                                    By: */s/ Harold E. Patricoff*
                                                    Harold E. Patricoff, Fla. Bar No. 508357
                                                    Kristin Drecktrah Paz, Fla. Bar No. 91026
                                                    Aleksey Shtivelman, Fla. Bar No. 99159
                                                    200 S. Biscayne Boulevard, Suite 4100
                                                    Miami, Florida 33131
                                                    Tel.: (305) 358-6300
                                                    Fax: (305) 381-9982
                                                    hpatricoff@shutts.com
                                                    kpaz@shutts.com
                                                    ashtivelman@shutts.com

MIADOCS 20873275 6